1

2

3

4                   UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7   I.R.,[1]                          Case No.  3:19-cv-05934-JCS

              Plaintiff,              **ORDER REGARDING CROSS**
8                                     **MOTIONS FOR SUMMARY**
       v.                             **JUDGMENT**
9
    ANDREW SAUL,                       Re: Dkt. Nos. 14, 23
10
              Defendants.
11

12

13  **I.    INTRODUCTION**

14          Plaintiff I.R. brings this action challenging the final decision of Defendant Andrew Saul,

15  Commissioner of Social Security (the "Commissioner"), denying I.R.'s application for disability

16  benefits after a hearing before an administrative law judge ("ALJ").  The parties filed cross

17  motions for summary judgment pursuant to Civil Local Rule 16-5.  For the reasons discussed

18  below, I.R.'s motion is GRANTED in part, the Commissioner's motion is DENIED, and the

19  matter is REMANDED for further administrative proceedings consistent with this order.[2]

20  **II.   BACKGROUND**

21          I.R.'s filed a previous application for benefits on March 3, 2015, alleging a disability onset

22  date of March 1, 2010.  *See* Admin. Record ("AR," dkt. 13) at 87.  The Commissioner denied that

23  application, and ALJ Arthur Zeidman upheld the Commissioner's denial on May 3, 2017.  *Id.* at

24  84–95.  I.R. did not appeal ALJ Zeidman's decision.

25

26  _____
    [1]  Because opinions by the Court are more widely available than other filings, and this order
27  contains potentially sensitive medical information, this order refers to Plaintiff only by her initials.
    This order does not alter the degree of public access to other filings in this action provided by Rule
    5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).
28  [2]  The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to
    28 U.S.C. § 636(c).

United States District Court
Northern District of California

On May 25, 2017, I.R. filed her present application for disability benefits, alleging a disability onset date of the same day. *Id.* at 15. I.R. claims that she suffers from hypertension (high blood pressure), type 2 diabetes, diabetic neuropathy (nerve damage caused by her diabetes), restless leg syndrome, trigger finger in both thumbs, pain in both hands, and a torn retina in her left eye. *See, e.g.*, *id.* at 105, 115, 132, 141, 223, 235, 241, 243–44, 269, 273. The Commissioner initially denied her application on October 4, 2017, and denied it again on reconsideration on October 26, 2017. *Id.* at 15, 100–12, 114–26, 132–37, 141–46. On November 3, 2017, I.R. filed a written request for a hearing before an ALJ, *see id.* at 147, and she testified at the hearing on August 23, 2018, *see id.* at 27–54. On November 13, 2019, ALJ E. Alis upheld the Commissioner's denial of benefits, *see id.* at 15–22, and the Appeals Council denied review on July 26, 2019, *see id.* at 1–6. On September 23, 2019, I.R. filed the present action challenging the Commissioner's final decision. *See* Compl. (dkt. 1).

## A.    Medical Records

The following summary of I.R.'s medical records focuses on records identified by the parties and the ALJ and relevant to her alleged disability. Specifically, the Court focuses on records related to I.R.'s ability to use her hands, to stand or walk for extended periods of time, and to lift and carry weight. Accordingly, this summary is not intended as a complete recitation of either the administrative record or I.R.'s medical history. The record includes six categories of relevant treatment records.

First, on June 1, 2015, prior to the Commissioner's denial of I.R.'s previous application of benefits, Robert Tang, MD, conducted a consultative examination. AR at 277–82. His notes indicate that I.R. had a hysterectomy in July 2009 and three follow-up surgeries for "fibroids and . . . postoperative infection," though the cause of each surgery was "not clear to [I.R.]" *Id.* at 277. Dr. Tang diagnosed I.R. with "decreased lifting and chronic discomfort" due to this "series of four surgeries for hysterectomy and postoperative infection," and he assessed her as limited to lifting and carrying "up to 10 pounds occasionally and 10 pounds frequently." *Id.* at 279; *see id.* at 277 (observing that I.R. "obviously has lifting restrictions and chronic discomfort" related to the "repeated surgeries and postoperative courses"). While Dr. Tang also observed that I.R. has a

United States District Court
Northern District of California

1   "history of right foot neuropathy" related to her diabetes, his assessment indicated that I.R. could

2   "stand without limitations" and "walk up to six hours." *Id.* at 279; *see id.* at 279–80.

3          Second, between August 2015 and March 2017, I.R. regularly visited the Highland

4   Wellness Adult Medicine Clinic. *See id.* at 283–352, 310-33, 360–403.[3]  I.R. was initially seen for

5   her diabetes and high blood pressure, but she also complained of pain and triggering in her left

6   thumb during a November 2015 visit, when Natalie Vizcarra, PA, assessed her with trigger finger.

7   *Id.* at 288.  During each of her five follow-up visits between December 2015, and August 2016,

8   primarily with Sancia Ferguson, MD, I.R. again complained of pain and triggering in her left

9   thumb, and during two visits in May and August 2016, I.R. also complained of pain in her right

10  thumb and "a brief episode of numbness in the fingers of her right hand." *Id.* at 293, 298–99, 301,

11  304, 308, 311, 313–14, 316–17.  Because I.R.'s "chronic" left thumb pain had not been

12  "adequately controlled by acetaminophen and exercises," Dr. Ferguson referred I.R. for a steroid

13  injection in her left thumb.  *Id.* at 317; *see id.* at 311, 316–17, 321.  On August 11, 2016, I.R.

14  received the injection, *see id.* at 323–27, and the notes from I.R.'s subsequent September 2016

15  visit indicate that I.R. had experienced "significant improvement" with her left thumb and was

16  "able to flex [it] without difficulty," though she had also developed "some new symptoms" with

17  her right thumb.  *Id.* at 328; *see id.* at 331–32.  Although I.R. returned to the clinic in December

18  2016 and March 2017, it appears that she did not receive further treatment for her hand pain

19  during those visits.  *See generally id.* at 360–73.  The clinic's records from this period also do not

20  appear to reference any symptoms or diagnoses affecting I.R.'s lower extremities, other than foot

21  pain from stepping on a metal cord splitter in the fall of 2018.  *See id.* at 288–89; *see generally id.*

22  at 283–352; 360–403.

23         Third, on September 11, 2017, after the previous ALJ had affirmed the Commissioner's

24  denial of I.R.'s previous application for benefits and I.R. had filed her present application, Eugene

25  McMillan, MD, conducted a consultative evaluation.  *See id.* at 428–34.  With respect to I.R.'s

26

27  [3]  The medical records from I.R.'s May 2, August 1, August 11, and September 29, 2016 visits
    appear in the administrative record twice.  *Compare* AR at 310–33, *with id.* at 374–98.  For ease
28  of reference, the Court cites them using the page numbers of their first appearances in the
    administrative record.

United States District Court
Northern District of California

thumbs, Dr. McMillan observed no triggering, no redness, and no thickening of the flexor tendons. *Id.* at 431.  He found that I.R. a grip strength of 28 kilograms in her right hand and 20 kilograms in her left hand.  *Id.*  He also observed that I.R. had "decreased vibration sense in her toe tips" and decreased ankle jerk reflexes, but he otherwise recorded no abnormalities related to I.R.'s lower extremities.  *Id.*  Dr. McMillan concluded that I.R. has high blood pressure, type 2 diabetes, diabetic neuropathy of her lower extremities, and "arthritis of thumb."  *Id.*  According to his assessment, I.R. has the ability to lift and carry 50 pounds occasionally and 25 pounds frequently; to stand or walk for six hours out of an eight-hour workday; to engage in activities that require stooping, kneeling, or crouching for at least one third of the workday; and to use her hands for gripping occasionally, but without limitation on fine manipulations.  *Id.*

Fourth, on October 4, 2017, Kyung Lee, MD, a state examiner, opined that I.R. is capable of medium work; of lifting and carrying 50 pounds occasionally and 25 pounds frequently; of standing or walking six hours out of an eight-hour workday; and of occasionally handling and fingering with her left hand.  *Id.* at 106–10.  On October 25, 2017, H. Samplay, MD, another state examiner, agreed with Dr. Lee's assessment.  *Id.* at 120–24.  Dr. Samplay noted that although I.R. had "alleged generalized body pain and worsening of nerve damage" at the reconsideration stage, there were "no additional [medical records] for review."  *Id.* at 123.  Additionally, Drs. Lee and Samplay acknowledged that the assessments of I.R.'s abilities by Drs. Tang and McMillan were more restrictive, but they did not explain why they disagreed with those assessments, aside from boilerplate language indicating that they were "without substantial support from the medical source[s] who made [them], which renders [them] less persuasive."  *Id.* at 110, 124.

Fifth, I.R. visited the Eastmont Wellness Podiatry Clinic in January and March 2018 for treatment related to her diabetes.[4]  *Id.* at 436–46; 451–62.  The notes from the former visit indicate that I.R. reported that she was experiencing numbness and tingling in her feet and that she had experienced these symptoms for a couple of years.  *Id.* at 436.  Randolph Wright, DPM, assessed

---

[4]  The medical records from I.R.'s March 2017 visit appear in the administrative record twice. *Compare* AR at 441–46, *with id.* at 457–62.  Again, the Court cites them using the page numbers of their first appearances in the administrative record.

I.R. with diabetic neuropathy, *see id.*, but his examination revealed no abnormal findings, *see id.* at 439.  At the follow-up visit, Dr. Wright assessed I.R. with pain in her toes on both feet and a fungus infection in both of her big toes, and he debrided her toenails.  *Id.* at 441.  But aside from the fungus infection, Dr. Wright's second examination revealed no abnormal findings.  *Id.* at 444.  Although Dr. Wright scheduled a follow-up visit nine weeks later, the administrative record does not include records from any follow-up visit.  *See id.* at 441, 445.

Sixth, in July 2018, I.R. again visited the Highland Wellness Adult Medicine Clinic for follow-up laboratory tests.[5]  AR at 463–82.  The notes from this visit indicate that I.R. complained of "[b]ilateral foot tingling" or "numbness," and that these symptoms were likely caused by I.R.'s diabetes.  *Id.* at 465, 467.

**B.   Administrative Hearing**

ALJ E. Alis held a hearing on August 23, 2018.  AR at 27–54 (transcript).  I.R. appeared with an attorney.  *See id.*

In response to questions from the ALJ, I.R. testified that she had last worked as a cashier at a Popeye's Chicken restaurant until approximately March 1, 2010, when she was laid off because "business was slow."  *Id.* at 31.  Subsequently, I.R. applied for other jobs, "[l]ike other cashier jobs, [or] anything that [she] could possibly get" given her inability to lift "more than ten pounds because of the surgery [she] had in '09."  *Id.* at 32.  When asked whether she could perform a cashier job if offered one, I.R. explained that she "can't stand long" but also agreed that she "probably could" if she could use a stool to alternate between sitting and standing.  *Id.*

In response to questions from her attorney, I.R. testified that while she worked at Popeye's, she was on her feet most of the day, "walking and standing," primarily taking orders and handling food.  *Id.* at 34; *see id.* at 33.  Further, I.R. testified that since the previous ALJ had held his hearing on her previous application for benefits (on December 6, 2016), she had developed numbness, tingling, and pain in her feet as a result of her diabetes.  *Id.* at 34–35.  I.R. explained

---

[5]  Some of the medical records from this visit also seem to appear in the administrative record twice.  *Compare* AR at 465–70, *with id.* at 471–78.  Once again, the Court cites them using the page numbers of their first appearances in the administrative record.

United States District Court
Northern District of California

that these symptoms prevent her from standing or walking for long periods of time, and she estimated that she needs to sit down and rest after standing in one place for twenty minutes or after walking for forty minutes. *Id.* at 34–35. I.R. also explained that she avoids lifting more than ten pounds, and she has others help her with anything "that would have to do with lifting," such as bringing in the groceries. *Id.* at 36. Additionally, I.R. testified that she experiences pain in both hands with worse pain in her left hand—due to trigger finger in her left thumb—and cramping in her fingers on both hands—potentially due to arthritis. *Id.* at 36–37. I.R. explained that she does chores around the house, but the cramping in her hands has caused her to drop dishes in the sink while washing them and prevents her from cleaning for extended periods of time. *Id.* at 37–39.

In response to further questioning by the ALJ, I.R. clarified that she does not lift more than ten pounds because her gynecologist told her not to do so in 2010 after her hysterectomy, post-operation infection, and follow-up surgeries to avoid causing a hernia. *Id.* at 41, 44–45. When the ALJ asked I.R. what was preventing her from working, I.R. identified her hands, her feet, and her diabetes. *Id.* at 41. Although the August 2016 steroid shot "helped a lot" with the trigger finger in her left thumb, she testified that she has not received any additional shots in part due to a concern that doing so might damage her bones. *Id.* at 42; *see id.* at 41, 44. She explained that when her finger locks up—usually in the mornings, approximately five to six times a week—she cannot grab onto things, like utensils, and she avoids trying to pick things up so she will not drop them. *Id.* at 42–43. I.R. testified that although she dresses herself, she often has difficulty completing tasks like putting on earrings, buttoning small buttons, and picking up coins due to the problems with her hands. *Id.* at 45–46.

A vocational expert, Christopher Salvo (the "VE"), appeared by telephone. *Id.* at 15, 28, 47–53. In response to more questions from the ALJ, I.R. explained that while she worked at Popeye's, the heaviest she had to lift was "maybe three pounds"—"like light boxes with like cups in it"—and that she was on her feet "[a]ll day." *Id.* at 48. The VE classified I.R.'s past relevant work as the occupation of fast food worker, which is light work, both generally and as actually performed. *Id.* at 49; *see* Dictionary of Occupational Titles ("DOT") 920.587-018, 1991 WL 672682. The ALJ then presented the VE with a hypothetical person of I.R.'s age, education, and

work experience who is limited to lifting or carrying fifty pounds occasionally and twenty-five pounds frequently; to standing or walking six hours out of an eight out workday; to occasionally handling and fingering with the non-dominant hand; and to frequently handling and fingering with the dominant hand. AR at 49–50. The VE testified that such a person could perform I.R.'s past relevant work as a fast food worker and confirmed that his testimony was consistent with the DOT. *Id.* at 50. When the ALJ asked for "other jobs that would also fit within this hypothetical" at "the medium level," the VE identified the alternative occupations of hand packager, machine packager, and home attendant, and he again confirmed that his testimony was consistent with the DOT. *Id.* at 50–51; *see* DOT 920.685-078 (hand packager), 1991 WL 687942; DOT 920.685-078 (machine packager), 1991 WL 687942; DOT 354.377-014 (home attendant), 1991 WL 672933.

Next, the ALJ inquired whether same hypothetical person could perform work as a fast food worker if they were limited to light work and to occasionally handling with both hands. AR at 51. The VE responded, "No, Your Honor, I believe that a fast food worker needs to more than occasionally handle and finger . . . ." *Id.* When the ALJ asked whether this testimony was "consistent with the DOT," the VE responded:

> That's based on my experience in watching people, but I believe . . . if I were to look those up, the fast food worker as far as handl[ing], fingering, and feeling, that it would be consistent with . . . companion work such as the <u>Worker Trade Data Book</u>, the <u>Guide for Occupational Exploration</u>, and other classification of jobs. These are books that work with the <u>Dictionary of Occupational Titles</u> and discuss a wide variety of functions and skills . . . . So, it is consistent with those books.

*Id.* 50–51. The ALJ then questioned whether the hypothetical person limited to occasional handling with both hands could perform the alternate occupations of hand packager, machine packager, and home attendant. *Id.* at 52. The VE responded in the negative, explaining that they would need to have use of one of their hands "more than one-third of the time, more than occasional." *Id.* Finally, when the ALJ asked whether the hypothetical person limited to occasional handling with both hands could perform other medium or light jobs, the VE responded that he "believe[d]" that he could identify jobs at the light level, but not at the medium level. *Id.* at 52.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.   Regulatory Framework for Determining Disability

When a claimant alleges a disability and applies to receive Social Security benefits, the ALJ evaluates the claim using a sequential five step process.  20 C.F.R. § 404.1520(a)(4).  First, if the claimant has engaged in "substantial gainful activity" during the alleged period of disability, the claimant is not disabled.  *Id.* § 404.1520(a)(4)(i).  Second, if the claimant has no "severe medically determinable impairment," the claimant is not disabled.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant has an impairment that meets or equals the definition of an impairment specifically listed in the regulations, the claimant is disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, if—based on the claimant's residual functional capacity ("RFC")—the claimant can still perform the claimant's past relevant work, the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  At the fifth and final step, if the claimant cannot perform other work available in the national economy, the claimant is disabled, or if work is available that the claimant could perform, the claimant is not disabled.  *See id.* § 404.1520(a)(4)(v).  "The claimant bears the burden of proof at Steps One through Four, but the burden shifts to the Commissioner at Step Five."  *Barnes v. Berryhill*, 895 F.3d 702, 703 n.3 (9th Cir. 2018).

### D.   The ALJ's Decision

First, the ALJ found that I.R. has not engaged in substantial gainful activity since May 25, 2017, her alleged disability onset date.  AR at 17.  Second, the ALJ found that I.R. has the following severe impairments: "diabetes mellitus with diabetic sensory neuropathy of the lower extremities, arthritis/trigger finger of the left thumb, and obesity."  *Id.*  The ALJ determined that I.R.'s high blood pressure is not a severe impairment because it is "stable with medication," because I.R. did not complain of any related symptoms at the hearing, and because there is no evidence that her high blood pressure limits her ability to perform basic work activities.  *Id.*  Additionally, despite I.R.'s testimony that she cannot lift more than ten pounds, the ALJ concluded that I.R.'s "remote history of" hysterectomy and post-operative infections" is not a severe impairment, because there is "nothing in the record to support [I.R.'s] allegation" that her gynecologist told her not to do so, and because there is "no evidence that this impairment continues to affect [I.R.'s] ability to work."  *Id.*  Third, the ALJ found that I.R.'s impairments,

1    individually and collectively, do not meet or equal the severity of the impairments specifically

2    listed in the regulations.  *Id.* at 17–18.

3          The ALJ then concluded that I.R. has the RFC to perform medium work, except that she is

4    limited to occasional handling and fingering with her left hand and frequent handling and

5    fingering with her right hand.  *Id.* at 18–21.  The ALJ determined that I.R.'s testimony concerning

6    the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with

7    the medical evidence and the other evidence in the record."  *Id.* at 19.  Regarding I.R.'s reported

8    pain and cramping in her hands, the ALJ stated that I.R. does not currently take pain medications;

9    that she has not sought out a subsequent steroid injection despite the effectiveness of the August

10   2016 injection in her left thumb; that Dr. McMillan's examination revealed a 28-kilogram grip

11   strength in I.R.'s right hand, a 20-kilogram grip strength in her left hand, no redness or triggering

12   of her thumbs, and no thickening of the flexor tendons; and that I.R.'s treatment records "fail to

13   reflect any abnormal findings with regard to [I.R.'s] upper extremities."  *Id.*  Thus, the ALJ

14   concluded that I.R.'s symptoms in her hands are adequately accommodated by limiting her to

15   occasional handling and fingering with her left hand and frequent handling and fingering with her

16   right hand.  *Id.* at 19, 21.  With respect to I.R.'s diabetic neuropathy and her claimed numbness,

17   tingling, and pain in her feet, the ALJ stated that I.R. does not currently take any medications to

18   treat her diabetic neuropathy or any pain arising therefrom; that "physical examinations by both

19   [I.R.'s] podiatrist and primary care physician have revealed normal findings, including normal

20   reflexes, strength, and sensation in her feet"; and that Dr. McMillan noted that I.R. could walk

21   without difficulty and that his examination of I.R.'s lower extremities was normal, other than

22   "decreased vibration sense in the tips of [her] toes."  *Id.* at 19.  Consequently, the ALJ concluded

23   that I.R.'s symptoms in her feet are adequately accommodated by limiting her to medium work.

24   *Id.* at 19, 21.  Lastly, the ALJ found "no evidence" that I.R.'s obesity "on its own" impairs her

25   functional abilities; to the extent it "exacerbate[s]" I.R.'s foot pain, the ALJ determined that it, too,

26   is adequately accommodated it by limiting I.R. to medium work.  *Id.* at 20.

27         The ALJ accepted Dr. McMillian's opinions that I.R. could perform medium work and can

28   only occasionally grip with her left hand.  *Id.* at 20.  But he rejected Dr. McMillan's assessments

United States District Court
Northern District of California

that I.R. can only occasionally grip with her right hand and engage in activities that require stooping, kneeling and crouching. *Id.* According to the ALJ, these assessments are inconsistent with the remaining medical evidence, including Dr. McMillan's own examination findings. *Id.* Similarly, the ALJ observed that Dr. Tang had opined that I.R. was limited to lifting and carrying ten pounds, but the ALJ deemed this opinion "unpersuasive" because it was made almost two years prior to I.R.'s alleged disability onset date and because it is inconsistent with the remaining medical evidence, including Dr. Tang's own examination findings. *Id.* Meanwhile, the ALJ found "very persuasive" the two state examiners' opinions that I.R. could perform "medium work with occasional gross and fine manipulation with the upper left extremity." *Id.*

Next, the ALJ determined that I.R. is an individual of advanced age, with at least a high school education, with the ability to communicate in English, and whose past relevant work is unskilled. *Id.* at 21. At the fourth step, the ALJ concluded that I.R. can perform her past relevant work, adopting the VE's opinion that an individual with the RFC that the ALJ assessed can perform the occupation of fast food worker. *Id.* at 21–22. And at the fifth step, the ALJ alternatively concluded that I.R. can perform other jobs in the national economy, adopting the VE's opinion that an individual with the assessed RFC can also perform the occupations of hand packager, machine packager, and home attendant. *Id.* at 22. Accordingly, the ALJ held that I.R. is not disabled as defined by the Social Security Act. *Id.*

### E.   The Parties' Arguments

#### 1.   Whether the ALJ Failed to Reasonably Reconcile an Apparent Conflict Between the VE's Testimony and the DOT

Primarily relying on *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017), and Social Security Ruling ("SSR") 00-4p, I.R. argues that the ALJ erroneously concluded that she can perform her past relevant work as a fast food worker, because—according to both the DOT and common experience—that job requires handling and fingering "constantly" or "two third of the day."[6] Pl.'s Mot. (dkt. 14) at 10, 11; *see id.* at 4, 10–12; *see also* SSR 00-4p, 2000 WL 1898704,

---

[6] According to the Social Security Administration, "[o]ccasionally" means occurring from very little up to one-third of the time, or generally no more than two hours of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). "Frequent[ly]" means occurring from one-third

United States District Court
Northern District of California

at *2 (Dec. 4, 2000).  Similarly, I.R. contends that the ALJ's alternative conclusions that I.R. can

perform work as a hand packager, a machine packager, and a home attendant are erroneous,

because each of those occupations also requires "frequent to constant" handling.  Pl.'s Mot. 16;

*see id.* at 15–16.[7]

The Commissioner responds that the ALJ properly relied on the VE's testimony that an

individual limited to occasional handling and fingering with their nondominant hand could

perform these occupations, because the VE "confirmed his testimony was consistent with the

DOT."  Comm'r's Mot. (dkt. 23) at 4 (citing AR at 21).  The Commission argues that because the

DOT does not "specify" whether a fast food worker needs to use their non-dominant hand on an

occasional basis, there was no apparent conflict between the VE's testimony and the DOT for the

ALJ to resolve.  *Id.* at 5.

Because the ALJ simply asked the VE whether his testimony was consistent with the DOT,

and because the VE merely responded "yes," I.R. replies that the ALJ failed to "fully develop the

---

to two-thirds of the time, or two to six hours of an eight-hour workday.  *Id.* at *6.  Further:

> *Reaching, handling, fingering, and feeling* require progressively finer usage of the
> upper extremities to perform work-related activities. Reaching (extending the hands
> and arms in any direction) and handling (seizing, holding, grasping, turning or
> otherwise working primarily with the whole hand or hands) are activities required in
> almost all jobs. Significant limitations of reaching or handling, therefore, may
> eliminate a large number of occupations a person could otherwise do. Varying
> degrees of limitations would have different effects, and the assistance of a VS may
> be needed to determine the effects of the limitations. "Fingering" involves picking,
> pinching, or otherwise working primarily with the fingers. It is needed to perform
> most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at
> all levels of exertion. As a general rule, limitations of fine manual dexterity have
> greater adjudicative significance—in terms of relative numbers of jobs in which the
> function is required—as the person's exertional RFC decreases. Thus, loss of fine
> manual dexterity narrows the sedentary and light ranges of work much more than it
> does the medium, heavy, and very heavy ranges of work . . . .

SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985).

[7] The briefs filed by I.R.'s attorney Josephine Gerrard include a number of errors of grammar and
spelling (including at least one instance of I.R.'s name), frequently fail to use quotation marks to
indicate quotations, barely explain some of the arguments raised (for example, citing the "grids"
without discussing the categories in which I.R. falls or the test to be applied to someone in that
category, Pl.'s Mot. at 15), skip incoherently between arguments within a given section, fail to
distinguish between two different ALJs' decisions (only one of which is on appeal here), and
generally do not meet the standards this Court expects from a licensed attorney.  Counsel is
admonished that future briefs resembling those submitted here may result in a referral to the
Court's Standing Committee on Professional Conduct.

1    record" to resolve the conflict between the VE's testimony and the DOT.  Reply (dkt. 24) at 2 &

2    n.1 (citing, *e.g.*, *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015)).

3              **2.   Whether the ALJ Erroneously Discredited I.R.'s Symptoms Testimony**

4              Additionally, I.R. contends that the ALJ erroneously discredited her symptoms testimony

5    "without offering specific, clear and convincing reasons for doing so."   Pl.'s Mot. at 13–14, 16.

6    This section of I.R.'s motion does not identify any specific portions of her testimony, but she

7    references Dr. Ferguson's "diagnos[es]" of "episodes of numbness in the fingers of [I.R.'s] right

8    hand," "chronic pain in both [of I.R.'s] thumbs," and I.R.'s inability to flex her left thumb due to

9    pain, *id.* at 14 (citations omitted, including a citation to the previous ALJ's decision), and a

10   separate background section of her motion recounts I.R.'s testimony that her "fingers cramp up,"

11   *id.* at 7 (quoting AR at 37).  Although I.R.'s argument is not entirely clear, she contends that if her

12   testimony regarding the symptoms in her hands were credited, she is disabled because a "strong

13   grip strength is necessary for lifting and carrying 50 or more [pounds] required for medium work

14   and specifically working as a fast food worker."  *Id.* at 14 ("The ALJ 's [sic] findings as to

15   limitations is [sic] reasonable.  However his finding [that I.R.] can perform medium work, or any

16   work dependent on handling and gripping is not supported by medical evidence.").  According to

17   I.R., she is entitled to a remand for an immediate award of benefits under the Ninth Circuit's

18   "credit-as-true" doctrine.  *Id.* at 16–17 (citations omitted).

19             The Commissioner argues that the ALJ was justified in discrediting I.R.'s symptom

20   testimony because this testimony was undermined by other portions of her testimony and is

21   inconsistent with the objective evidence.  Comm'r's Mot. at 7–8.  The Commissioner also

22   contends that I.R. has waived any argument based on Dr. Ferguson's treatment records because

23   they pre-date the previous ALJ's decision, which I.R. has not challenged.  *Id.* at 8 (citing *Morales*

24   *v. Astrue*, 852 F. App'x 843, 844 (9th Cir. 2007)).  Further, the Commissioner argues that Dr.

25   Ferguson did not render any "opinion" that the ALJ was required to consider, and that the contents

26   of her records do not support further limitations on I.R.'s ability to handle and finger.  *Id.*

27   (citations omitted).  Lastly, if the Court finds error, the Commissioner contends that it should

28   remand for further proceedings to allow the ALJ to determine whether further limitations are

appropriate and whether jobs exist for individuals with such limitations.[8]  *Id.* at 8–10.

In her reply brief, I.R. again argues that the ALJ erroneously discredited her symptoms testimony, but she again fails to reference any specific portion of her testimony.  Reply at 3–4. Likewise, I.R. again references Dr. Ferguson's treatment records, but states only that "Dr. Ferguson diagnose[d] her with chronic pain in both thumbs, worse on left side" and an inability "to flex [her] left thumb due to pain."  *Id.* at 3 (citing AR at 316).  Finally, while I.R. raised no argument regarding her neuropathy or other foot impairments in her motion, and identifies no relevant testimony or evidence in her reply, she argues for the first time in her reply that "her impairments primarily due to diabetic neuropathy[] prevent her from being able to perform fast food work" and that the ALJ "failed to address her inability *to stand* or use both hands for more than short periods of the day."  *Id.* at 1 (emphasis added).

### 3.  Whether the "Grids" Compel a Finding of Disability

I.R. argues briefly in her motion that the Medical-Vocational Profiles, commonly known as the "grids," compel a finding of disability because I.R. "cannot perform her past work or medium work because she is limited to occasional fingering and handling," but this section of her motion does not address any provision of the grids to explain why such a conclusion is warranted.  Pl.'s Mot. at 15.  The Commissioner argues that I.R. is capable of medium work and the grids would not deem her disabled, and that regardless, the ALJ permissibly relied on the VE's testimony rather than the grids to determine that I.R. was not disabled.  Comm'r's Mot. at 5–6.  I.R. contends in her reply that that the grids compel a finding of disability because the ALJ's conclusion that she could perform medium work was not supported by substantial evidence—but again without addressing any particular rule contained in the grids.  Reply at 2–3.

## III.   ANALYSIS

### A.   Legal Standard

District courts have jurisdiction to review the final decisions of the Commissioner and

---

[8]  The Commissioner also objects, for the record, to the Ninth Circuit's "credit-as-true" doctrine, but does not dispute that this Court is bound by precedent establishing and reaffirming that doctrine.  Comm'r's Mot. at 9.

United States District Court
Northern District of California

1    have the power to affirm, modify, or reverse the Commissioner's decisions, with or without

2    remanding for further administrative proceedings.  42 U.S.C. § 405(g); *see also id.* § 1383(c)(3).

3          When asked to review the Commissioner's decision, the Court takes as conclusive any

4    findings of the Commissioner which are free from legal error and supported by "substantial

5    evidence."  42 U.S.C. § 405(g).  Substantial evidence is "such evidence as a reasonable mind

6    might accept as adequate to support a conclusion," and it must be based on the record as a whole.

7    *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "'Substantial evidence' means more than a

8    mere scintilla," *id.*, but "less than a preponderance."  *Desrosiers v. Sec'y of Health & Human*

9    *Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted).  Even if the Commissioner's findings

10   are supported by substantial evidence, the decision should be set aside if proper legal standards

11   were not applied when weighing the evidence.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.

12   1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1978)).  In reviewing the record, the

13   Court must consider both the evidence that supports and detracts from the Commissioner's

14   conclusion.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760

15   F.2d 993, 995 (9th Cir. 1985)).

16         If the Court identifies defects in the administrative proceeding or the ALJ's conclusions,

17   the Court may remand for further proceedings or for a calculation of benefits.  *See Garrison v.*

18   *Colvin*, 759 F.3d 995, 1019–21 (9th Cir. 2014).

19   **B.    The ALJ Did Not Adequately Resolve Apparent Conflicts Between the VE's**
          **Testimony and the DOT**
20

21         "Although evidence provided by a vocational expert 'generally should be consistent' with

22   the *Dictionary of Occupational Titles*, '[n]either the [DOT ] nor the [vocational expert] . . .

23   evidence automatically "trumps" when there is a conflict.'"  *Massachi v. Astrue*, 486 F.3d 1149,

24   1153 (9th Cir. 2007) (quoting SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000)) (some

25   alterations in original).  As the Ninth Circuit has explained, Social Security Ruling 00-4p

26   "unambiguously provides that '[w]hen a [vocational expert] . . . provides evidence about the

27   requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about

28   any possible conflict between that [vocational expert] . . . evidence and information provided in

United States District Court
Northern District of California

1    the [DOT],'" and that the ALJ "'*will* ask' the vocational expert 'if the evidence he or she has

2    provided' is consistent with the [DOT] and obtain a reasonable explanation for any apparent

3    conflict." *Id.* at 1152–53 (quoting SSR 00-4p, 2000 WL 1898704, at *2) (some alterations in

4    original; footnotes omitted).

5           Accordingly, if a VE's opinion that a claimant is able to perform work "conflicts with, or

6    seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to

7    reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez*

8    *v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citation omitted).  Specifically, the ALJ "must ask

9    the expert to explain the conflict and 'then determine whether the vocational expert's explanation

10   for the conflict is reasonable' before relying on the expert's testimony to reach a disability

11   determination." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citations omitted).

12   Otherwise, the ALJ's "failure to resolve an apparent inconsistency may leave . . . a gap in the

13   record that precludes [the court] from determining whether the ALJ's decision is supported by

14   substantial evidence." *Id.* (citation omitted).

15          In order to "trigger the ALJ's obligation to inquire further," however, the conflict between

16   the VE's testimony and the DOT "must be 'obvious or apparent.'" *Lamear*, 865 F.3d at 1205

17   (quoting *Gutierrez*, 844 F.3d at 808).  In other words, the VE's testimony typically "must be at

18   odds with the [DOT's] listing of job requirements that are essential, integral, or expected."

19   *Gutierrez*, 844 F.3d at 808.  In two recent cases, the Ninth Circuit has provided guidance on this

20   "fact-dependent" standard.  *Id.*

21          In *Gutierrez*, the VE opined that an individual with Ms. Gutierrez's limitations—including

22   not being able to "lift more than five pounds with her right arm or lift that arm above her

23   shoulder"—could perform work as a cashier.  *Id.* at 807.  The ALJ "then specifically asked the

24   expert if his opinion was consistent with the description of cashiering set forth in the [DOT], and

25   the expert said it was," without acknowledging that the DOT "specifies that cashiers must engage

26   in frequent 'reaching.'" *Id.*  On review, the Ninth Circuit explained that because the DOT

27   describes "occupations" rather than "specific jobs," there may be some tasks within a DOT

28   occupational description that are not "essential, integral, or expected" for every job within the

United States District Court
Northern District of California

15

occupation. *Id.* at 807–08. When there are potential conflicts between a VE's testimony and such nonessential tasks, the court reasoned, the potential conflicts are "less likely to qualify as apparent conflicts that the ALJ must ask about," especially when the occupation is a "familiar one." *Id.* at 808. Accordingly, the Ninth Circuit observed that the DOT's "windy, highly technical, 1000-word" occupational description states that a cashier "may need to 'reach frequently,'" but its examples of "Cafeteria Cashier," "Store Cashier," and "Change-Booth Cashier" contemplate "mundane functions as making change, operating a cash register, selling tickets, and scanning Universal Product Codes—none of which require overhead reaching." *Id.* (citation omitted). Additionally, the court stated that common experience suggests that it is "unlikely and unforeseeable" that a cashier will need to reach *overhead*, and that even in the "exceptional circumstances" when a cashier must reach overhead, they can do so with only one arm. *Id.* at 808–09 & n.2. Consequently, there was no apparent conflict between the VE's testimony and the DOT that needed to be reconciled. *Id.* at 809.

Meanwhile, in *Lamear*, the VE opined that an individual with Mr. Lamear's limitations—including "being able only 'occasionally' to handle, finger, and reach overhead with his left, non-dominant hand and arm"—could perform work as an office helper, mail clerk, or parking lot cashier, without acknowledging that the DOT describes these occupations as requiring "frequent" handling. 865 F.3d at 1203. The VE "did not explain how [Mr. Lamear] could do this work with his left hand and arm limitations, and the ALJ never asked the VE to reconcile any potential inconsistency between [Mr. Lamear's] manipulative limitations and the DOT's job descriptions." *Id.* at 1204. The Ninth Circuit observed that, based on common experience, it was *not* likely and foreseeable that an individual with Mr. Lamear's limitations could perform their duties in these occupations. *Id.* at 1205. To the contrary, the DOT's "lengthy" job descriptions "strongly suggest[ed]" the opposite: an office helper, mail clerk, or parking lot cashier likely would need both hands "to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner." *Id.* (citation omitted). Specifically, the Ninth Circuit noted that the DOT indicates that these occupations require "'frequently' engaging in handling, fingering, and reaching" and their general tasks include "opening and sorting mail, stuffing envelopes, distributing paperwork, and

1  counting change." *Id.* at 1205–06 (citations omitted).  Consequently, the court reversed and

2  remanded to allow the ALJ to "ask the VE to reconcile these jobs with [Mr. Lamear's] left hand

3  limitations." *Id.* at 1206.

4          As explained above, in the present case, the VE opined that an individual limited to

5  occasionally handling and fingering with the non-dominant hand and frequently handling and

6  fingering with the dominant hand can perform the occupations of fast food worker, hand packager,

7  machine packager, and home attendant, and he agreed that his testimony was consistent with the

8  DOT.  AR 49–51.  The VE also testified that an individual limited to occasionally handling and

9  fingering with both hands could not perform these occupations because they require the use of at

10 least one hand more than one-third of the time.  *Id.* at 50–52.  When the ALJ asked the VE

11 whether his testimony regarding the occupation of fast food worker was "consistent with the

12 DOT," the VE responded that it was based on his experience "in watching people" and that he

13 believed it was consistent with the DOT's "companion work," such as the Worker Trade Data

14 Book and the Guide for Occupational Exploration ("GOE").  *Id.* at 50–51.  Without further

15 questioning, the ALJ adopted the VE's opinion that an individual limited to occasional handling

16 and fingering with the non-dominant hand can perform the occupations of fast food worker,

17 machine packager, hand packager, and home attendant.  *Id.* 21–22.  So, if this opinion was in

18 apparent conflict with the DOT, the ALJ erred in accepting it without first asking the VE to

19 explain the conflict and determining that any such explanation was reasonable.

20         The Court concludes that the VE's opinion was in apparent conflict with the DOT.  First,

21 each relevant listing in the DOT "strongly suggest[s] that it is likely and foreseeable that using

22 both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable

23 and efficient manner." *Lamear*, 865 F.3d at 1205 (quoting *Gutierrez*, 844 F.3d at 808).  For

24 example, a fast food worker "depresses keys of multicounting machine to simultaneously record

25 order and compute bill"; "assembles items on serving tray or in takeout bag"; "[p]resses lids onto

26 beverages and places beverages on serving tray or in takeout container"; and "[r]eceives

27 payment."  DOT 311.472-01, 1991 WL 672682.  A hand packager "[p]ackages materials and

28 products manually," which includes tasks such as "[w]rap[ping] . . . material," and "[n]ail[ing],

United States District Court
Northern District of California

17

glu[ing], or clos[ing] and seal[ing] containers." DOT 920.685-018, 1991 WL 687916. A machine packager "[m]akes minor adjustments or repairs [to packaging machines], such as opening valves, changing forming and cutting dies, setting guides, or clearing away damaged product containers"; feeding products into the machines; pressing buttons; and moving levers. DOT 920.685-078, 1991 WL 687942. Lastly, a home attendant "[c]ares for elderly, convalescent, or handicapped persons" in their homes, which includes tasks such as "[c]hang[ing] bed linens, wash[ing] and iron[ing] patient's laundry, and clean[ing] patient's quarters"; preparing and serving food; assisting patients to move, dress, bathe, and groom; administering medications; and applying treatments. DOT 354.377-014, 1991 WL 672933. Second, according to the GOE,[9] fast food workers, hand packagers, and machine packagers must "constantly" handle and "frequently" finger, while home attendants must "frequently" handle and "occasionally" finger. *See* GOE 09.04.01 (fast food worker), 1991 WL 672682; GOE 06.04.38 (hand packager), 1991 WL 687942; GOE 06.04.38 (machine packager), 1991 WL 687942; GOE 10.03.03 (home attendant), 1991 WL 672933. Thus, even if one were to assume that these occupational requirements are unilateral (insofar as they require constant, frequent, or occasional use of only one hand), an individual with I.R.'s limitations—occasional handling and fingering with one hand and frequent handling and fingering with the other—could not perform the occupations of fast food worker, hand packager, and machine packager because each requires a minimum of constant handling, which the ALJ did not find I.R. capable of doing with *either* hand. Moreover, where the GOE does not specify

---

[9] Requirements for capabilities like handling and fingering typically appear in the GOE rather than in the DOT itself, although the DOT includes cross references to relevant listings in the GOE, and many sources for DOT listings include GOE listings alongside them. Published opinions by the Ninth Circuit have generally treated requirements included in the GOE interchangeably with DOT definitions without specifically identifying the distinction between the two, including in *Lamear* and *Gutierrez*. *See, e.g. Lamear*, 865 F.3d at 1203 (attributing GOE requirements for frequent handling, fingering, and reaching to the DOT, and holding that an ALJ erred in failing to reconcile a conflict between the VE's testimony and that requirement); *Gutierrez*, 844 F.3d at 807 (attributing a GOE requirement for frequent reaching to the DOT). One unpublished decision distinguished between the two sources and declined to consider a requirement stated only in the GOE. *Mondragon v. Astrue*, 364 F. App'x 346, 349 n.2 (9th Cir. 2010). Because *Lamear* and *Gutierrez* are binding precedent, *Mondragon* is not, and the Commissioner has not argued here that any distinction between the DOT and GOE is relevant, the Court treats the handling and fingering requirements stated in the GOE as part of the DOT's definitions of the relevant occupations.

whether its handling requirements for a particular occupation are bilateral and common experience does not provide a clear answer, an ALJ must inquire as to that issue, which the ALJ did not do here. *See Lamear*, 865 F.3d at 1206.  The Court "cannot say that, based on common experience, it is likely and foreseeable" that a fast food worker, a hand packager, a machine packager, or a home attendant with I.R.'s handling and fingering limitations could perform their duties.  *Id.* at 1205.

Because the DOT's occupational descriptions, the GOE's occupational requirements, and common experience suggest that each of the identified occupations requires using both hands more than one third of the time and using one hand more than two-thirds of the time there were apparent conflicts between the VE's testimony and the DOT that the ALJ was required to inquire about and resolve.  *Cf. Williams v. Berryhill*, No. 16-cv-01105-KAW, 2017 WL 4156195, at *4–5 (N.D. Cal. Sept. 18, 2017) (remanding for an ALJ to reconcile any conflict between a VE's opinions that an individual who could not engage in "repetitive, forceful gripping" with their nondominant hand could perform certain occupations, including as a fast food worker, with the handling requirements listed in the DOT or GOE).  "Absent anything in the record to explain th[ese] apparent discrepanc[ies]," the Court must reverse and remand for further proceedings.[10]

---

[10]  Some district courts within this circuit have denied challenges to an ALJ's reliance at step four on a VE's testimony allegedly in conflict with the DOT in part on the ground that the claimant carries the burden at step four to prove that they cannot perform their past relevant work.  *See Austin v. Saul*, No. 19-CV-604-JM(WVG), 2020 WL 4336071, at *44 (S.D. Cal. July 28, 2020), *adopted*, 2020 WL 5077738 (S.D. Cal. Aug. 26, 2020); *Solomon v. Berryhill*, No. 17-CV-2530 JLS (BGS), 2019 WL 1205882, at *6–7 (S.D. Cal. Mar. 14, 2019); *Guerrero v. Berryhill*, No. 3:16-cv-01229-WQH-NLS, 2017 WL 4174257, at *2 (C.D. Cal. Sept. 21, 2017), *adopted*, 2018 WL 823012 (C.D. Cal. Feb. 12, 2018).  In the present case, the Commissioner has not defended the ALJ's decision on this ground, and the Court is not persuaded that that there is a meaningful distinction between an ALJ's reliance on a VE's testimony allegedly in conflict with the DOT at step four and at step five.  *See Cindie L. Z. v. Comm'r of Soc. Sec.*, No. 2:18-CV-01074-RSL-DWC, 2019 WL 2477811, at *3 (W.D. Wash. May 20, 2019), *adopted*, 2019 WL 2475920 (W.D. Wash. June 13, 2019) (holding that an ALJ erred at step four in relying on a VE's opinion in apparent conflict with the DOT that an individual with the claimant's limitations could perform the claimant's past relevant work); *Fowler v. Berryhill*, No. 3:16-cv-1520-SI, 2018 WL 566217, *3–7 (D. Ore. Jan. 26, 2018) (same); *Blaze v. Berryhill*, No. CV 16-08238-JDE, 2017 WL 5633026, at *6 (C.D. Cal. Nov. 20, 2017) (same).  "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion."  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted).  And an ALJ's "failure to resolve an apparent inconsistency may leave . . . a gap in the record that precludes [the court] from determining whether the ALJ's decision is supported by substantial evidence."  *Zavalin*, 778 F.3d at 846 (citation omitted); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

19

1   *Lamear* 865 F.3d at 1206.

2       **C.      The Court Does Not Reach I.R's Other Arguments**

3           I.R. also argues that the ALJ erroneously discredited her symptoms testimony, and

4   suggests that the ALJ may have erred in considering medical opinion evidence, although her

5   arguments on that point are far from clear.  Mot. at 13–14, 16; Reply at 3–4.  I.R. asserts that,

6   applying the credit-as-true doctrine to her symptom testimony, the case should be remanded for an

7   award of benefits rather than further proceedings.  Mot. at 16; Reply at 3–4.

8           "When the ALJ denied benefits and the court finds error, the court ordinarily must remand

9   to the agency for further proceedings before directing an award of benefits."  *Leon*, 880 F.3d at

10  1045 (citing *Treichler*, 775 F.3d at 1099).  "[A]n ALJ's failure to provide sufficiently specific

11  reasons for rejecting the testimony of a claimant or other witness does not, without more, require

12  the reviewing court to credit the testimony as true."  *Treichler*, 775 F.3d at 1106.  In appropriate

13  circumstances, however, the court may order immediate award of benefits under the Ninth

14  Circuit's "credit-as-true" rule.  *Leon*, 880 F.3d at 1045 (citing *Garrison*, 759 F.3d at 1019).

15          The district court may remand to the ALJ to calculate and award benefits when: (1) "the

16  ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony

17  or medical opinion"; (2) "there are [no] outstanding issues that must be resolved before a disability

18  determination can be made" and "further administrative proceedings would [not] be useful"; and

19  (3) "on the record taken as a whole, there is no doubt as to disability."  *Leon*, 880 F.3d at 1045

20  (citations and internal quotation marks omitted); *Varney v. Sec'y of Health & Human Servs.*, 859

21  F.2d 1396, 1401 (9th Cir. 1988) (emphasizing that the credit-as-true rule applies to both claimant

22  testimony and medical opinion evidence); *see also Garrison*, 759 F.3d at 1021 (holding that a

23  district court abused its discretion in declining to apply the "credit as true" rule to an appropriate

24  case).  The credit-as-true rule does not apply "when the record as a whole creates serious doubt as

25  to whether the claimant is, in fact, disabled within the meaning of the Social Security Act,"

26  *Garrison*, 759 F.3d at 1021, when "there is a need to resolve conflicts and ambiguities," *Treichler*,

27  775 F.3d at 1101, or when there is ambiguity about when the claimant's disability began that is not

28  solved by the evidence credited as true.  *See Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir.

United States District Court
Northern District of California

20

2015).  This credit-as-true rule, which is "settled" in the Ninth Circuit, *Garrison*, 759 F.3d at 999, is intended to encourage careful analysis by ALJs, avoid duplicative hearings and burden, and reduce delay and uncertainty facing claimants, many of whom "suffer from painful and debilitating conditions, as well as severe economic hardship." *Id.* at 1019 (quoting *Varney*, 859 F.2d at 1398–99).

Here, I.R. has for the most part failed to identified any particular testimony or evidence that should be credited as true and would compel a finding of disability.  I.R.'s arguments for finding her disabled as a matter of law, whether under the "grids" or otherwise, generally turn on her purported inability to perform her past work.  *See, e.g.*, Mot. at 15–16.  She suggests that if her symptoms testimony were credited, she is disabled because "[a] strong grip strength is necessary for lifting and carrying 50 or more [pounds] required for medium work and specifically working as a fast food worker." *Id.* at 14.  But I.R. does not identify any symptoms testimony that would show she could not lift that weight, nor any basis to depart from the VE's testimony that her past relevant work as a fast food worker is "light work" both generally and as performed, *see* AR at 49, which under relevant regulations "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also* GOE 09.04.01, 1991 WL 672682 (classifying the occupation of fast food worker as light work).  Moreover, I.R. testified that the heaviest amount of weight that she had to lift while working at Popeye's was "maybe three pounds"—"like light boxes with like cups in it."  AR at 48; *see Pinto v. Massanari*, 249 F.3d 840, 844–45 (9th Cir. 2001) (noting that the ability to engage in past work may be satisfied by a claimant's capacity for *either* the work as actually performed *or* the typical requirements of the occupation).  To the extent I.R. might be able to show that she is disabled based on her limited handling and fingering abilities, any such determination would require further proceedings to reconcile the VE's testimony regarding the demands of her past work with the DOT and GOE, as discussed above.  I.R.'s passing references to her lower body impairments— primarily in her reply, without citation to evidence—provide no more clear basis for finding her disabled if any testimony or other evidence were credited.

I.R. has not met her burden to show that she is entitled to the extraordinary remedy of

1   remanding the case for an award of benefits, rather than the typical approach of remand for further

2   proceedings.  *See Leon*, 880 F.3d at 1045 ("[T]he court ordinarily must remand to the agency for

3   further proceedings before directing an award of benefits.").  Any error in the ALJ's treatment of

4   symptom testimony or medical opinion evidence thus would not entitle I.R. to relief beyond that

5   which is required to address the ALJ's error in failing to consider the discrepancy between the

6   VE's testimony and the DOT and GOE, as discussed above—remand for further administrative

7   proceedings.  The Court therefore declines to address I.R.'s difficult-to-follow arguments on these

8   issues in detail, but instructs the Commissioner to consider on remand whether all aspects of the

9   ALJ's decision are supported by substantial evidence.

10  **IV.   CONCLUSION**

11          For the reasons discussed above, I.R.'s motion is GRANTED in part, the Commissioner's

12  motion is DENIED, and the case is REMANDED for further administrative proceedings

13  consistent with this order.[11]  The Clerk shall enter judgment in favor of I.R. and close the case.

14          **IT IS SO ORDERED.**

15  Dated: March 19, 2021

16

17                                          _____
                                            JOSEPH C. SPERO
                                            Chief Magistrate Judge

United States District Court
Northern District of California

_____

[11] I.R. summarily requests in her motion and reply that the Court award her attorney's fees pursuant to the Equal Access to Justice Act, 38 U.S.C. § 2412(d), without any explanation in either brief as to why such relief is warranted. Mot. at 17; Reply at 4.  The Court denies this request without prejudice.  The parties should attempt to reach an agreement on attorney's fees before any separate motion for fees is brought by I.R. or her counsel.

22